UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NASSAU CONSTRUCTION CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> PULTE HOMES, INC., PULTE HOMES OF NEW JERSEY, LP, PULTE HOME CORPORATION, PULTE HOME CORPORATION OF THE DELAWARE VALLEY, and PULTE HOMES OF PA, LIMITED PARTNERSHIP, <br><br> Defendants. | HONORABLE JOSEPH E. IRENAS <br><br> CIVIL ACTION NO. 07-5536 (JEI) <br><br> **OPINION** |

**APPEARANCES:**

MASELLI WARREN, P.C.
By: Michael W. Hoffman, Esq.
600 Alexander Road
Princeton, NJ 08540
    Counsel for Plaintiff

ARCHER & GREINER, P.C.
By: Stephen M. Fogler, Esq.
    William L. Ryan, Esq.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    Presently before the Court is Defendant Pulte Homes, Inc.'s ("Pulte Homes") Motion to Dismiss Count III of Plaintiff's Complaint.[1]  (Docket No. 5.)  The remaining named Defendants are alleged subsidiaries of Pulte Homes (the "Subsidiary

---

    [1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Defendants"). In connection with Plaintiff Nassau Construction Co, Inc.'s ("Nassau") two breach of contract claims against the Subsidiary Defendants in Counts I and II of its Complaint, it seeks to pierce the corporate veil and hold Pulte Homes liable as the parent corporation in Count III. For the reasons set forth below, Pulte Homes' motion will be granted, though Nassau will have three weeks to move to vacate the dismissal and file an amended complaint.

## I.

Nassau is a company that provides construction services to real estate developers such as Defendants. (Compl. ¶ 9.) Nassau and the Subsidiary Defendants allegedly entered into several contracts between February 18, 2002 and June 5, 2006. (*Id.* ¶ 10.) Nassau claims that it fully performed under each contract, but that the Subsidiary Defendants have failed to pay approximately $230,000 for construction services it performed. (*Id.* ¶¶ 11-12.) It further alleges that the Subsidiary Defendants have engaged in unilateral "charge backs," which it describes as "reduc[ing] the amount due to [Nassau] for the purported cost of remedying alleged defects in the construction work related to or provided by [Nassau]." (*Id.* ¶¶ 13-14.)

Nassau's Complaint contains three counts: (1) breach of contract by the Subsidiary Defendants for monies due; (2) breach

of contract by the Subsidiary Defendants for unlawful charge backs; and (3) liability of the parent corporation, Pulte Homes. In support of Count III, Nassau asserts that Pulte Homes "apparently dominates each of the Subsidiary Defendants" and that they are "merely a conduit of [Pulte Homes] as the parent corporation." (*Id.* ¶¶ 33-34.)  Nassau further alleges that Pulte Homes "has abused the privilege of incorporation by using each of the Subsidiary Defendants . . . to perpetrate a fraud or injustice or otherwise to circumvent the law." (*Id.* ¶ 35.)  It claims that the Subsidiary Defendants are not engaged in independent businesses of their own, but rather that each is "exclusively engaged in the performance of services for [Pulte Homes] as the parent." (*Id.* ¶¶ 36-37.)  Specifically, Nassau alleges that Pulte Homes "has undercapitalized each of the Subsidiary Defendants" and that the collective failure of the Subsidiary Defendants to pay the $230,000 allegedly owed under the contracts provides evidence of this undercapitalization. (*Id.* ¶¶ 38-39.)

Based on these allegations, Nassau requests that this Court pierce the corporate veil and hold Pulte Homes liable for any damages resulting from breaches of contracts by the Subsidiary Defendants.  On February 5, 2008, Pulte Homes filed a motion to dismiss Count III of Nassau's Complaint.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss any part of a complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the Court accepts as true all well pleaded factual allegations contained in the complaint and draws all reasonable inferences from such allegations in the light most favorable to the plaintiff. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (alteration in original) (internal citations omitted). To survive a Rule 12(b)(6) motion, "a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965 (internal citations omitted)).

## III.

Ordinarily a federal district court sitting in diversity

4

must apply the choice-of-law rules of the forum state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  In this case, neither party argues that the substantive law of the forum, New Jersey, differs from the substantive law of other jurisdictions that might apply to the issues raised by the Complaint.[2]  Both parties rely exclusively on New Jersey law in addressing the circumstances that permit a court to pierce the corporate veil and hold a parent corporation liable for the acts of its subsidiaries.  Therefore, the Court will apply New Jersey substantive law.  *See Simon v. United States*, 341 F.3d 193, 198 n.4 (3d Cir. 2003) (citing *Nat'l Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Mktg. Corp.*, 779 F.2d 1281, 1284-85 (7th Cir. 1985), which stated that "[w]here parties fail to raise a possible conflict of substantive laws . . . the substantive law of the forum controls" (internal quotation marks omitted)).

Under New Jersey law, it is a fundamental proposition that shareholders are generally insulated from the liabilities of a corporation, and "[e]ven in the case of a parent corporation and its wholly-owned subsidiary, limited liability normally will not be abrogated."  *State Dep't of Envtl. Prot. v. Ventron Corp.*, 468

---

[2]  It is not clear from Nassau's Complaint or the parties' briefs whether the various contracts between Nassau and the Subsidiary Defendants contained a choice-of-law provision.  It is also unclear where the contracts were made or where construction work was performed pursuant to the contracts.  Thus, as a threshold matter, the Court cannot determine if the substantive law of jurisdictions other than New Jersey might apply.

A.2d 150, 164 (N.J. 1983). However,

> [u]nder certain circumstances, courts may pierce the corporate veil by finding that a subsidiary was a mere instrumentality of the parent corporation. Application of this principle depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent. Even in the presence of corporate dominance, liability generally is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.

*Id.* at 164-65 (internal quotation marks and citations omitted). New Jersey courts have noted that the "hallmarks" of a parent's abuse of the privilege of incorporation are "typically the engagement of the subsidiary in no independent business of its own but exclusively the performance of a service for the parent and, even more importantly, the undercapitalization of the subsidiary rendering it judgment-proof." *OTR Assocs. v. IBC Servs., Inc.*, 801 A.2d 407, 409-10 (N.J. Super. Ct. App. Div. 2002) (citing *Ventron*, 468 A.2d 150).

In *Allied Corp. v. Frola*, 701 F. Supp. 1084 (D.N.J. 1988), this Court dismissed several counts of a third-party complaint that sought to pierce the corporate veil and hold three parent corporations liable for the acts of a subsidiary, Quanta Resources Corporation, in relation to the environmental contamination of a parcel of land. The complaint alleged:

> 11. Quanta [Resources] was a wholly owned subsidiary of Quanta Holding, a wholly owned subsidiary of Waste Recovery, a wholly owned subsidiary of Becker.

6

> 12. At all relevant times, Becker, Waste Recovery, Quanta Holding and Quanta [Resources] were a single economic enterprise, directed, controlled and dominated by Becker.
>
> 13. Becker created and used Waste Recovery, Quanta Holding and Quanta [Resources] as corporate shells in an effort to shield Becker from accountability and responsibility for [Quanta Resources'] acts or omissions at the site. Becker, Waste Recovery and Quanta Holding are responsible for [Quanta Resources'] acts and omissions at the site and the acts and omissions of its employees, agents and contractors.
>
> 14. At all relevant times, Becker so dominated Waste Recovery, Quanta Holding and Quanta [Resources], that these corporations had no separate existence but were mere instrumentalities or conduits, one for the others.
>
> 15. As a result, Becker, Quanta Holding and Waste Recovery are liable for the acts and omissions of Quanta [Resources].

*Id.* at 1086 (alterations in original). Under another count, the third-party complaint alleged:

> 2. Becker, Waste Recovery and Quanta Holding were in a position to be, and were, knowledgeable of [Quanta Resources'] bringing into tanks at the site and discharging on the site surface and to the site subsurface oils and chemicals and waste materials.
>
> 3. Becker, Waste Recovery and Quanta Holding dominated and controlled Quanta [Resources] and had the capacity and were in a position to control and to stop [its] bringing to the site, and discharging on the site surface and subsurface, oils and chemicals and waste materials.
>
> 4. Becker, Waste Recovery and Quanta Holding were in a position to make decisions and to take action to prevent and abate the discharge on the site surface and subsurface of oils and chemicals and waste materials.

*Id.* at 1086-87 (alterations in original).

Analyzing the allegations under Federal Rule of Civil

Procedure 8(a)(2),[3] this Court found the common law counts deficient under New Jersey law. *Allied Corp.*, 701 F. Supp. at 1089. It reasoned that "supporting allegations are necessary whenever the pleading in some way casts aspersions on defendant's moral character. A claim that a defendant has engaged in illegality or injustice within the meaning of *Ventron* would seem to be subject to this requirement." *Id.* (internal quotation marks and citation omitted).

> [I]t is possible to . . . pierce the corporate veil on grounds of substantial injustice, even if there is no claim of fraud. But we require an actual factual allegation-more substantial than an intangible suspicion-before we will loose the judicial process, and the expense of discovery and depositions, on the defendant.

*Id.* (quoting *Laborers Pension Fund v. Bakke Constr. Co.*, No. 87C963, 1987 WL 19818, *2 (N.D. Ill. Nov. 10, 1987)).

By contrast, the Third Circuit reversed this Court's decision granting a motion to dismiss a complaint under Rule 12(b)(6), in which one claim sought to pierce the corporate veil of a defendant, Anthony Exporting Company ("Exporting"). *Melikian v. Corradetti*, 791 F.2d 274 (3d Cir. 1986). In that

---

[3] The Rule provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The Court assessed the third-party complaint under this standard rather than the more strict standard of Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

case, plaintiffs made the following allegations in support of their claim:

> (1) Coppersmith, Bernstein and Corradetti are the beneficial owners of and control Anthony Associates, Inc. ("Associates"), Corradetti Enterprises, Inc. ("Corradetti, Inc."), Exporting, Memco Trading Co., Inc. ("Memco"), and R.A.M. Packaging ("R.A.M."), all of which are located at the same address.
>
> (2) There is a "pervasive commingling" of the assets of these entities and they are run as a "single economic enterprise."
>
> (3) Associates organized Exporting with capitalization of $2,500 and remains its sole stockholder.
>
> (4) Coppersmith, Bernstein and Corradetti are the officers and directors of both Associates and Exporting and the managing partners of R.A.M.
>
> (5) Exporting has never had any substantial business since its inception, except for the single wrongful transaction with the plaintiffs, and no significant assets were conveyed to it by the parent corporation.
>
> (6) Exporting was grossly undercapitalized from its inception and has been "insolvent since the beginning."
>
> (7) Exporting maintains no inventory, no books, no business records and no "viable bank checking account."
>
> (8) R.A.M. paid for the payroll and benefits of Exporting and the other corporations as well as for their legal fees.
>
> (9) Corradetti, Inc. was billed for all of the telephone and telex expenses of Exporting.
>
> (10) The "directors and executives of . . . [Exporting] did not act independently in the interest of the subsidiary but took their orders from the parent corporation."
>
> (11) Exporting was used by this single economic enterprise "as an instrument of fraud."

9

*Id.* at 281.  In holding that the district court erred in granting the defendants' motion to dismiss, the Third Circuit stated that the complaint "provide[d] sufficient supporting details to prevent one from disregarding this allegation [that Exporting was used as an instrument of fraud] as merely conclusory pleading." *Id.* at 282.

Here, Count III of Nassau's Complaint contains conclusory allegations similar to *Allied Corporation*, rather than supporting details such as those provided in *Melikian*.  While Nassau is correct that it has "clinically" stated a cause of action for piercing the corporate veil, the Supreme Court recently clarified in *Twombly* that "a formulaic recitation of the elements of a cause of action will not" survive a Rule 12(b)(6) motion.  127 S. Ct. at 1965.  Count III simply mirrors the language of *Ventron*, alleging that Pulte Homes "dominates each of the Subsidiary Defendants," all of which are "merely a conduit" for Pulte Homes, and that it has "abused the privilege of incorporation by using each of the Subsidiary Defendants . . . to perpetrate a fraud or injustice or otherwise to circumvent the law."  *Compare Ventron*, 468 A.2d at 164-65, *with* Compl. ¶¶ 33-35.  The claim then proceeds to mirror the language of *OTR Associates* with regard to the "hallmarks" of abuse, stating that the Subsidiary Defendants are "engaged in no independent business of their own" but rather are "exclusively engaged in the performance of services for

[Pulte Homes]," and that Pulte Homes has "undercapitalized each of the Subsidiary Defendants." *Compare OTR Assocs.*, 801 A.2d at 409-10, *with* Compl. ¶¶ 36-38.

The only allegation that arguably provides some level of factual detail is found in paragraph thirty-nine of Nassau's Complaint: "Evidence of such undercapitalization is the inexplicable failure of each of the Subsidiary Defendants herein to tender a total of approximately $230,000.00 on such contracts for construction services provided and *not* complained of by any defendant." This allegation constitutes nothing more than an intangible suspicion that, by itself, cannot survive a motion to dismiss. If, as plaintiffs did in *Melikian*, Nassau provided specific allegations that, for example, the Subsidiary Defendants were organized "with capitalization of $2500" or that they maintained "no inventory, no books, no business records and no 'viable bank checking account[s],'" Count III would contain sufficient supporting details. But paragraph thirty-nine merely relies on monies allegedly owed under a breach of contract claim contained in the same Complaint as evidence that Pulte Homes undercapitalized the Subsidiary Defendants. The Court will not "loose the judicial process, and the expense of discovery and depositions," on Pulte Homes in order to permit Plaintiff to attempt to find support for its intangible suspicion alleged in Count III.

However, the Third Circuit has repeatedly held that district court's should not grant a 12(b)(6) motion without providing a plaintiff with an opportunity to amend its complaint. *See, e.g.*, *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 810-11 (3d Cir. 2006) ("[I]n this circuit, '[w]hen a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.'" (second alteration in original) (quoting *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002))). Therefore, Nassau will have three weeks from the date that the accompanying Order is entered to move to vacate this dismissal. Nassau must attach a proposed amended complaint to its motion for the Court's consideration.

### IV.

For the reasons set forth above, Defendant Pulte Homes, Inc.'s Motion to Dismiss Count III of Nassau's Complaint will be granted. Nassau will have three weeks to move to vacate the dismissal and file an amended complaint. The Court will issue an appropriate Order.

Dated: May 29, 2008

                                                s/ Joseph E. Irenas
                                                **JOSEPH E. IRENAS, S.U.S.D.J.**